IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02888-MSK-MEH

DANVIS S. SMITH,

Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant's Motion to Dismiss [filed October 29, 2013; docket #9]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #11]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court respectfully RECOMMENDS that the Motion to Dismiss be **granted**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

**BACKGROUND**

Plaintiff Danvis Smith ("Smith") initiated this action on or about August 22, 2013 in Denver County District Court, then amended his complaint as a matter of course on or about September 17, 2013. (Dockets #4 and #5.) On October 23, 2013, Defendant Aetna Life Insurance Co. ("Aetna") removed the action to this Court pursuant to 28 U.S.C. § 1441(a) governing federal question jurisdiction. (Docket #1.)

**I. Facts**

The following are factual allegations made by Smith in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On April 6, 2008, Smith sustained tears of his left rotator cuff and bicep tendon when he was pulled from his car by a police officer, who alleged Smith hit him with the vehicle. Due to his injuries, Smith became unable to work and made a claim for disability benefits under his employer's group disability insurance underwritten by Defendant Aetna. Aetna paid Smith $1546.00 in benefits each month from 2008 to February 2010, at which time Aetna determined that Smith was "not disabled." In opposing Aetna's determination, Smith notified Aetna in writing over the course of a year that he had been continuously disabled and unemployed since April 6, 2008; however, Aetna ignored the notices.

Finally, Aetna acknowledged a notice, and Smith provided Aetna with documentation, including medical records and the written opinion of Judge Wendland of the Social Security Administration finding Smith had been continuously and permanently disabled. Despite this documentation, Aetna pursued the opinions of outside experts and determined that Smith's injuries

and impairments were not “disabling,” according to the insurance contract, beyond February 2010. Smith notes that certain information provided both to and by the outside experts was incorrect and, thus, the expert opinions were based on false information. Smith notified Aetna of such errors, but Aetna refused to review the matter further.

Smith claims that Aetna should have paid his disability benefits until he reached the age of 67 in July 2011; thus, Smith seeks recovery of approximately sixteen months of disability payments never received. Further, Aetna filed a lien against Smith’s settlement recovery in a lawsuit Smith filed against the police officer for his injuries. At the time, Smith felt he had no choice but to pay back the two years’ benefits Aetna paid him, but Smith claims here that he was entitled to keep the benefit payments because the lawsuit involved no recovery of lost wages. Accordingly, Smith also seeks recovery of the two years’ benefits payments he received but was “forced” to pay back.

## II. Procedural History

Based on these facts, Smith filed the operative Amended Complaint alleging generally that Aetna breached its insurance contract, engaged in bad faith in denying him benefits, violated Colo. Rev. Stat. § 10-3-1115 by unreasonably delaying and denying benefits, and violated Colo. Rev. Stat. § 6-1-105 by forming a pattern of deceptive trade practices that are threatening to the public at large.

Aetna filed the present motion to dismiss Smith’s claims for relief on October 29, 2013, arguing that all claims are preempted by ERISA, 29 U.S.C. § 1144(a). Citing the Tenth Circuit, Aetna contends that “common law tort and breach of contract claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan.” Motion, docket #9 at 7. Aetna also asserts that the statutory claims are preempted, as Smith concedes they arise from Aetna’s denial of benefits and recovery of payments from settlement funds in accordance with the

insurance contract.

Smith counters arguing first that it remains unsettled that this Court retains jurisdiction over this matter, pending resolution of his motion to remand.[2] Second, Smith argues Aetna misstates the facts and that the true facts demonstrate Aetna improperly denied him benefits and wrongly recouped benefit payments made to him. Next, Smith contends that his claims are not preempted by ERISA according to its "savings clause." Smith also asserts that his claims are brought against an insurer for its breach of an insurance policy, not the employee benefit plan, and Aetna's broad view of preemption conflicts with ERISA's purpose to promote the interests of employees and their beneficiaries. Finally, he argues that Colo. Rev. Stat. § 6-1-105 is not an "insurance" law but should be applied here, and its application should not be hindered by preemption where the violation is not related to ERISA.

Aetna replies that the only fact material to the present motion is whether Smith's claims "are based on benefits pursuant to an employee welfare plan governed by ERISA." Aetna also repeats that the Tenth Circuit requires a broad reading of ERISA, and that its saving clause is not applicable to Smith's claims. Aetna further asserts that the subject Plan *is* the policy on which Smith's claims are based; the Plan itself states that it is a "welfare benefit plan" governed by ERISA. Finally, Aetna argues that Smith fails to rebut the applicable, governing case law, and Smith's pronouncements that the applicable case law is "wrong" or "unconstitutional" are rebutted by the cases themselves.

The Court has reviewed the operative pleading, the motion, the briefs and the applicable law

---

[2]While Smith is correct that adjudication of the motion to dismiss is moot if Chief Judge Krieger were to find the Court has no jurisdiction, Smith's motion to remand raising such issue is currently before Judge Krieger; therefore, the Court will proceed to provide a report and recommendation on the pending motion to dismiss, in the event Judge Krieger denies the motion to remand.

and is sufficiently advised in the premises.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

**ANALYSIS**

Aetna argues the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA") preempts Smith's claims for breach of insurance contract, bad faith breach of insurance contract, violation of Colo. Rev. Stat. § 10-3-1115 for unreasonably delaying and denying benefits, and violation of Colo. Rev. Stat. § 6-1-105 by forming a pattern of deceptive trade practices that are threatening to the public at large. ERISA creates a "uniform regulatory regime over employee benefit plans" to "'protect ... the interests of participants in employee benefit plans and their beneficiaries.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). Accordingly, the Supreme Court has recognized ERISA as one of the few federal statutes for which complete preemption may be appropriate. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-67 (1987). "Complete preemption preserves ERISA's 'interlocking, interrelated, and interdependent remedial scheme,' which reflects congressional policy choices 'represent[ing] a careful balancing of the need for prompt and fair claims settlement procedures against the public

interest in encouraging the formation of employee benefit plans.'" *Potts v. CitiFinancial, Inc.*, 863 F. Supp. 2d 1121, 1123 (D. Colo. 2012) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)).

The Tenth Circuit describes the framework for a preemption analysis. *Jacobs v. Allstate Cafeteria Plan*, No. 05-cv-01623-MSK, 2007 WL 951786, at *2 (D. Colo. Mar. 28, 2007) (citing *Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1184 (10th Cir. 2003), *cert. denied*, 540 U.S. 1184 (2004)). The analysis begins with ERISA's broad preemption clause, which states: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.* (citing 29 U.S.C. § 1144(a)); *see also Kidneigh*, 345 F.3d at 1184. The analysis then turns to ERISA's saving clause, which provides: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." *Id.* (citing 29 U.S.C. § 1144(b)(2)(A)); *see also Kidneigh*, 345 F.3d at 1184. The saving clause directs the Court to ERISA's "deemer" clause, which provides:

> Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

*Id.* (citing 29 U.S.C. § 1144(b)(2)(B)); *see also Kidneigh*, 345 F.3d at 1184. Quoting the Supreme Court's opinion in *Pilot Life Ins. Co.*, 481 U.S. at 45, the Tenth Circuit describes the interplay of these clauses as follows:

> If a state law "relate[s] to ... employee benefit plan[s]," it is preempted. The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance."The

> deemer clause makes clear that a state law that “purport[s] to regulate insurance”cannot deem an employee benefit plan to be an insurance company.

*Kidneigh*, 345 F.3d at 1184 (citations omitted).

Keeping the applicable legal standards in mind, the Court will analyze each of Smith’s claims in turn.

**I. Breach of Insurance Contract**

For his breach of contract claim, Smith alleges:

> 23. The subject of this Action is the express contract of insurance between IAC (Service Magic Division), Smith’s employer on April 6, 2008, and Aetna Life Insurance Company with Smith being properly registered by IAC for all benefits due such full-time employees under said contract.
>
> 24. Plaintiff complied with all applicable conditions under the policy.
>
> 25. As a result of this Breach of Contract, Plaintiff has suffered the loss of the $68,000 in [disability] insurance benefits plus all lawful interest and the aforementioned consequential losses.

Amended Complaint, ¶¶ 23-25, docket #5.

It is well settled that ERISA preempts common law contract claims in Colorado. *Halprin v. Equitable Life Assurance Soc’y of U.S.*, 267 F. Supp. 2d 1030, 1039 (D. Colo. 2003) (citing *Taylor*, 481 U.S. at 62). Common law contract claims are “based on common law of general application that is not a law regulating insurance. Accordingly, the suit is pre-empted ....” *Id.* (quoting *Taylor*, 481 U.S. at 62).

Smith counters that Aetna construes ERISA “relate to” language too narrowly, which conflicts directly with the statutory language and intent. However, the Supreme Court has found “the express pre-emption provisions of ERISA are deliberately expansive,” explaining:

> “The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The

> Conference Committee rejected those provisions in favor of the present language, and indicated that section's pre-emptive scope was as broad as its language. *See* H.R.Conf.Rep. No. 93-1280, p. 383 (1974); S.Conf.Rep. No. 93-1090, p. 383 (1974)."
>
> The House and Senate sponsors emphasized both the breadth and importance of the pre-emption provisions. Representative Dent described the "reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans" as ERISA's "crowning achievement." 120 Cong. Rec. 29197 (1974). Senator Williams said:
>
> > "It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law." Id., at 29933.

*Pilot Life Ins. Co.*, 481 U.S. at 45-46 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983)). Here, Smith's claims arise from Aetna's denial of disability benefits and recoupment of benefits paid to Smith, the benefits of which are provided by an employer disability benefits plan; as such, Smith's claims "relate to" the IAC's disability benefits plan.

Smith also argues that his claims fall under ERISA's "savings clause." As set forth above, ERISA's saving clause excepts from exemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The Tenth Circuit cites the Supreme Court's decision in *Ky. Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329 (2003) to find that it substantially clarified the test for determining when a state law is not preempted by ERISA because it "regulates insurance" under § 1144(b)(2)(A): "First, the state law must be specifically directed toward entities engaged in insurance," and "[s]econd ... the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Kidneigh,* 345 F.3d at 1186 (quoting *Miller,* 538 U.S. at 342). Smith contends that his pleading alleges claims "directed specifically toward an entity

engaged in insurance such as Aetna Life Insurance Company." However, the question is not whether Smith's claim is directed toward insurance companies, but whether the cause of action – here, common law breach of contract – is specifically directed toward the insurance industry. "Stated otherwise, the state law must 'home[ ] in on the insurance industry.'" *Kidneigh*, 345 F.3d at 1186 (quoting *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 368 (1999)). In Colorado, a common law breach of contract claim is not directed specifically toward the insurance industry. *See Halprin*, 267 F. Supp. 2d at 1039.

Consequently, Smith's claim for breach of contract is preempted by ERISA, he fails to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6), and this Court respectfully recommends that the District Court grant the Defendants' motion to dismiss Smith's First Claim for Relief.

## II. Bad Faith Breach of Contract

For his bad faith breach of contract claim, Smith alleges:

> 28. Aetna failed to honor its obligations under the Plaintiff's statutory rights as per the subject insurance policy.
>
> 29. At all relevant times Aetna acted willfully, wantonly, recklessly and without regard for the legal, physical, emotional and financial consequences to Smith and his statutory rights.
>
> 30. Aetna's unreasonable and reckless conduct and wrongly maintained position is the direct cause of further injuries, aggravation of pre-existing health conditions, damages, and losses to the Plaintiff beyond the injuries incurred by the Plaintiff on April 6, 2008 and subsequent failed surgeries.
>
> 31. As a direct result of Aetna's conduct, Plaintiff incurred both economic and non-economic injuries and losses.

Amended Complaint, ¶¶ 28-31, docket #5.

"Colorado bad faith claims are preempted by ERISA because they conflict with ERISA's remedial scheme." *Kidneigh*, 345 F.3d at 1185. Colorado's bad faith claim provides an "additional

claim" to plaintiffs and "fit within the category of state laws *Pilot Life* had held to be incompatible with ERISA's enforcement scheme" by "provid[ing] a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA." *Id.* That is, "[n]owhere does [ERISA] allow consequential or punitive damages. Damages are limited to the recovery of 'benefits due ... under the terms of the plan.'" *Id.* (quoting *Conover v. Aetna US Health Care, Inc.*, 320 F.3d 1076, 1080 (10th Cir. 2003)). A Colorado bad faith claim "allows plan participants to obtain 'consequential and, in a proper case, punitive, damages' for breach of good faith and fair dealing by an insurer." *Id.* (quoting *Conover*, 320 F.3d at 1080). Where these types of damages are available, they "provide[] a cause of action excluded from [ERISA's] civil enforcement scheme and would therefore 'pose an obstacle to the purposes and objectives of Congress.'" *Id.* (quoting *Conover*, 320 F.3d at 1080); *see also Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1237 (10th Cir. 2002) (finding ERISA preempts Wyoming's bad faith law).

Despite Smith's unsupported protestations, the decision in *Kidneigh* governs Smith's claims. Like his breach of contract claim, Smith's bad faith claim neither is directed specifically toward insurance companies nor "substantially affect[s] the risk pooling arrangement" between insurers and their insureds, which is the hallmark of insurance contracts. *Kidneigh*, 345 F.3d at 1185 (citing *SEC v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 73 (1959)). That is,

> State law bad faith claims are not integral to the risk pooling arrangement for the reasons summarized in Pilot Life:
>
> > In contrast to the mandated-benefits law in Metropolitan Life, the common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed on in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages. The state common law of bad faith is therefore no more "integral" to the insurer-insured relationship than any State's general contract law is integral to a contract made in that

State.

481 U.S. at 51, 107 S.Ct. 1549.

Any-willing provider statutes, notice-prejudice rules, and independent review provisions all "substantially affect[ ] the type of risk pooling arrangements that insurers may offer." *Miller*, 123 S.Ct. 1471, 1477-78. By contrast, bad faith claims, whether common law or statutory, merely provide an additional remedy for policyholders. *See Gaylor*, 112 F.3d at 466 ("[Oklahoma bad faith law] does not effect a change in the risk borne by insurers and the insured, because it does not affect the substantive terms of the insurance contract. On the other hand, a law mandating that a certain disease be covered under health insurance contracts would effect a spread of risk, both from insureds to insurers, and among the insureds themselves."); *Nguyen v. Healthguard of Lancaster, Inc.*, 282 F. Supp. 2d 296, 2003 WL 22100157, at *8 (E. D. Pa. Aug.14, 2003) (Pennsylvania bad faith statute by providing an additional remedy for insureds if contract is breached, "bears no relation to the risk insured against, ... even though [it] may raise the premiums insureds must pay for their coverage."). As the Colorado federal district court in *Denette v. Life of Ind. Ins. Co.*, 693 F. Supp. 959 (D. Colo. 1988), noted with regard to Colorado's bad faith law, "[T]here is no indication that the statutes ... have any effect of transferring or spreading policy holder risk.... [T]hese statutes do not purport to regulate the substantive terms or content of insurance policies by mandating certain benefits." *Id.* at 966.

*Kidneigh*, 345 F.3d at 1187. Smith makes no other argument rebutting the decision in *Kidneigh*.

Consequently, Smith's claim for bad faith is preempted by ERISA, he fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and this Court respectfully recommends that the District Court grant the Defendants' motion to dismiss Smith's Second Claim for Relief.

## III. Violation of Colo. Rev. Stat. § 10-3-1115

For his third claim for relief, Plaintiff asserts violations of Colo. Rev. Stat. § 10-3-1115 and § 10-3-1116.[3] Section 10-3-1115 states, in pertinent part,

(1)(a) A person engaged in the business of insurance shall not unreasonably delay

---

[3]Smith states in his response brief that "[n]owhere in Smith's Amended Complaint does he claim any violation of C.R.S. § 10-3-1115." However, the operative pleading contradicts Smith's statement. *See* Amended Complaint, docket #5 at 9.

> or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.
>
> (b) For the purposes of this section and section 10-3-1116:
>
> (I) “First-party claimant” means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy. “First-party claimant” includes a public entity that has paid a claim for benefits due to an insurer's unreasonable delay or denial of the claim.
>
> (II) “First-party claimant” does not include:
>
> (A) A nonparticipating provider performing services; or
>
> (B) A person asserting a claim against an insured under a liability policy.
>
> (2) Notwithstanding section 10-3-1113(3), for the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.
>
> (3) If any provision of this section or its application to any person or circumstance is held illegal, invalid, or unenforceable, no other provisions or applications of this section shall be affected that can be given effect without the illegal, invalid, or unenforceable provision or application, and to this end the provisions of this section are severable.
>
> (4) The general assembly declares that this section is a law regulating insurance.

Colo. Rev. Stat. § 10-3-1115. Although unclear in the pleading, Smith appears also to bring his third claim pursuant to Section 10-3-1116(1), which states, in pertinent part,

> (1) A first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.

Colo. Rev. Stat. § 10-3-1116(1). Plaintiff specifically alleges:

> 33. Plaintiff is a first-party claimant.
>
> 34. Aetna’s delays, denials, and demands were unreasonable, as Aetna delayed and

> denied authorizing payment of covered benefits and demanded return of benefits without a reasonable basis for those actions.
>
> 35. Aetna's demand for the return of benefits was based on a set of false premises, which demand was enforced by duress of a threatened lawsuit, for which Plaintiff was ill-prepared to defend, due to extreme financial, physical, and emotional stresses largely caused both directly and indirectly by Aetna's failure to honor a just claim.
>
> 35. [sic] Defendant's unreasonable delays and denials caused Plaintiff to suffer additional damages and losses.
>
> 36. Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to attorney fees, costs and two times the covered benefit.

Amended Complaint, ¶¶ 33-36, docket #5.

Another court in this District was asked to determine whether ERISA preempts claims brought pursuant to subsection 10-3-1116(1) for a violation of section 10-2-1115 and found that it does. *See Flowers v. Life Ins. Co. of North Am.*, 781 F. Supp. 2d 1127, 1130-31 (D. Colo. 2011). While Judge Arguello found in *Flowers* that the statute regulates insurance, for purposes of ERISA's saving clause, she also determined that subsection 10-3-1116(1) does not "specifically affect the risk pooling arrangement" between the insurer and the insured. *Id.* at 1132. More specifically, and citing *Miller*, 538 U.S. at 338-39, Judge Arguello stated that *Miller* and its progeny "explained that the common thread in each case was that the state laws at issue 'alter[ed] the scope of permissible bargains between insurers and the insureds.'" *Id.* at 1131. Judge Arguello concluded that subsection 10-3-1116(1) does not alter the scope of permissible bargains, in that it "has no bearing on who gets into the risk pool, nor does it prescribe the conditions under which insurers must pay for assumed risk." *Id.* (citing *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1149 (10th Cir. 2009)). Rather, Judge Arguello found that the statute "merely provide[s] an additional remedy for policyholders" by "allow[ing] the insured to recover civil penalties when the insurer breaches the insurance contract

by unreasonably delaying payment. This type of civil penalty remedy does not affect the substantive terms or content of insurance policies." *Id.* at 1132.

This Court finds Judge Arguello's decision to be sound and persuasive in this matter. Smith makes no argument (other than those already addressed) rebutting the findings in *Flowers*. Consequently, Smith's claim brought pursuant to Colo. Rev. Stat. § 10-3-1116(1) for violation of Colo. Rev. Stat. § 10-3-1115 is preempted by ERISA, he fails to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6), and this Court respectfully recommends that the District Court grant the Defendants' motion to dismiss Smith's Third Claim for Relief.

**IV. Violation of Colo. Rev. Stat. § 6-1-105**

For his fourth claim for relief, Smith alleges a violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105, which lists "deceptive trade practices"; however, Smith does not identify which of the 57 practices in which Aetna has allegedly engaged. Rather, Plaintiff alleges:

> 38. Defendant has failed to deliver services within a reasonable time , not only to the Plaintiff, but also to numerous other insureds, thus forming a pattern of deceptive trade practices that are extremely threatening to the public at large who might consider and or depend on insurance from Aetna;
>
> 39. Aetna's delays, denials, and demands to the Plaintiff were unreasonable, as Aetna delayed and denied authorizing payment of covered benefits not only to the Plaintiff, but also to numerous other insureds while wrongfully demanding return of benefits paid.
>
> 40. Aetna wrongfully maintained the aforementioned lien against Plaintiff's settlement funds without a reasonable basis for that action, as it has done in numerous other cases of its insureds;
>
> 40. [sic] Defendant's unreasonable delays, denials, and demands caused Plaintiff to suffer damages and losses in similar fashion as Aetna has done in numerous cases with other of its insureds.

41. Pursuant to C.R.S. § 6-1-105, the Plaintiff is entitled to treble damages.

Amended Complaint, ¶¶ 38-41, docket #5.

Clearly, like his other claims, Smith's CCPA claim "relates to" the employer disability benefits plan from which his entitlement to disability benefits arises. Three other courts in this District have determined that similar Colorado Consumer Protection Act claims are preempted by ERISA. *See Cerenac v. UNUM Life Ins. Co. of Am.*, No. 07-cv-01601-REB, 2008 WL 920300, at *1 (D. Colo. Apr. 3, 2008); *Schmiedt v. Hartford Life & Accident Ins. Co.*, No. 07-cv-00219-RPM, 2007 WL 1576263, at *1 (D. Colo. May 30, 2007); *Halprin*, 267 F. Supp. 2d at 1037 (Babcock, J.). Smith makes no argument (other than those already addressed) rebutting the findings of these courts. This Court finds that the CCPA is, by no means, specifically directed at the insurance industry and, thus, the claim does not fall under the saving clause.

Consequently, Smith's claim for violation of Colo. Rev. Stat. § 6-1-105 is preempted by ERISA, he fails to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6), and this Court respectfully recommends that the District Court grant the Defendants' motion to dismiss Smith's Fourth Claim for Relief.

## V. Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective

allegations. *See Bellmon*, 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)).

Here, the Plaintiff has previously amended his pleading once without the benefit of guidance from the Court as to any defective allegations. Plaintiff's statements in his response brief conceding the possibility that his claims may be preempted lead the Court to believe that the deficiencies found herein may be cured. Section 502(a)(1)(B) permits plan participants to sue "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." *Davila*, 542 U.S. at 210 (citing 29 U.S.C. § 1132(a)(1)). A "participant" includes "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7); *see also Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1160 n. 14 (10th Cir. 2004) ("The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties outlined in § 502. Therefore, the requirement of § 502 is both a standing and a subject matter jurisdictional requirement."), *cert. denied*, 545 U.S. 1149 (2005) (citations and internal quotation marks omitted).

Former employees, such as Smith, have standing to sue under ERISA only if they have either a reasonable expectation of returning to covered employment or a "colorable claim to vested benefits" under the plan. *Potts*, 863 F. Supp. 2d at 1124 (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989)); *see also Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1533 (10th Cir.), *cert. denied*, 510 U.S. 822 (1993). Thus, "if an individual brings suit complaining of

a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

Accordingly, because it is possible Plaintiff may cure the pleading deficiencies by bringing an ERISA claim in this matter, the Court recommends that Plaintiff be allowed to file a Second Amended Complaint against Aetna within thirty (30) days of the District Court's Order resolving the present motion.

## CONCLUSION

Here, Aetna has demonstrated that each of Smith's four claims for relief is preempted by ERISA. However, the Court finds that Smith may amend his claims to conform to ERISA requirements. Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion to Dismiss [filed October 29, 2013; docket #9] the operative Amended Complaint be **GRANTED**, but that Smith be permitted leave to amend his pleading as set forth herein.

Respectfully submitted this 5th day of February, 2014, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge